## Wickliffe, et al. v. First National Bank of Central City, Assignee, et al.

(Decided June 17, 1919.)

### Appeal from Muhlenberg Circuit Court.

Pleading—Variance Between Pleading and Proof.—There was a variance between the pleadings and proof, amounting to a failure of proof under section 131 of the Code of Practice, where plaintiffs sued upon a contract and alleged compliance therewith, and their proof showed not a compliance with the contract sued upon, but a compliance if any with an extension and modification thereof by some seven or eight additional contracts between the parties which were not pleaded.

TAYLOR, EAVES & SPARKS and W. P. SANDIDGE for appellants.

BROWDER & BROWDER and R. P. CAREY for appellees, T. B. Caldwell, et al.

HUBERT MEREDITH and WALKER WILKINS for appellee, First National Bank of Central City.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellee, the First National Bank of Central City, as assignee of Andrew Hogg, instituted this action against the appellants, W. A. Wickliffe and the W. A. Wickliffe Coal Company, seeking to recover of them, $16,500.00 alleged to be due under the following contract:

"Browder, Ky., Sept. 11, 1909.

"Whereas I have given Andrew Hogg, of Drakesboro, Ky., an option to buy the property of the Wickliffe Coal Company at the price of $25.00 per acre, it being understood that the said company will have some 10,500 acres of fee simple and minerals together to convey to the said Hogg. The purchase price to be as follows:

"$50,000.00 cash and balance in semi-annual installments as set forth in the written option, said option to be exercised in 30 days from this date. Now it is agreed between us that in the event the said Hogg exercises said option and elects to buy said property in said time and makes the cash payment above mentioned and the notes for all deferred payments are made and delivered as set out in the option, and the purchase price amounts to as much as $262,500.00, which is at the rate of $25.00 per acre for 10,500 acres, then and in that event I hereby agree to give to the said Hogg a rebate in cash out of the $50,000.00 paid in, the sum of $16,500.00 in cash. In the event the purchase money should not amount to as much as $262,500.00, then the rebate to be allowed and paid to the said Hogg shall be in proportion as the $262,500.00 bear to the true purchase price, when same is ascertained, in no event is the said Hogg to receive a rebate greater than $16,500.00. This is a private agreement between the said Hogg and myself and upon each of us carrying out the agreements entered into between us, then this paper is to be returned to the said Wickliffe by the said Hogg, a copy of which is kept by the said Wickliffe and which has been signed in duplicate by both parties hereto.

"W. A. WICKLIFFE,
"ANDREW HOGG."

It is alleged in the petition that W. A. Wickliffe is president of the Wickliffe Coal Company, and that he executed and delivered the writing to Hogg, "by the terms of which he obligated himself and the Wickliffe Coal

Company to pay to said Hogg the sum of $16,500.00, in the event a certain option for the purchase price of the property of the Wickliffe Coal Company, should be exercised within thirty days from the date of said writing," and that "the said W. A. Wickliffe has authority to bind the said Wickliffe Coal Company for this sum," that "said option was exercised within thirty days of the writing referred to and copied above, and the property of the Wickliffe Coal Company was purchased at the price of $262,500.00, the first cash payment was paid and securities executed and delivered for the balance of said purchase money, according to the provisions of the said option and all accepted by the said W. A. Wickliffe and the Wickliffe Coal Company, and more than $50,000.00 have been paid by the purchasers on the purchase price of said property to the said W. A. Wickliffe and the Wickliffe Coal Company."

The issues tendered by the petition were not in the least altered by the two amendments thereto, since the first amendment only corrected a mistake in copying the contract into the original petition, while the second amended petition, which was traversed, simply alleged a conclusion of law that the contract sued on was in "full force and effect and binding upon all the parties thereto at the time the option as extended, which is referred to in the contract, was exercised and the property therein referred to sold and transferred by the defendants to the purchasers thereof."

No facts are alleged in the petition as amended or any other pleading of any party, showing any extension or alteration of the contract sued on, or any new promise with reference thereto.

W. A. Wickliffe and the W. A. Wickliffe Coal Company, without demurring to the petition, filed a joint answer in which they denied simply that Hogg had exercised his option on the property or purchased the property thereunder or paid therefor the sum of $262,500.00, or any part thereof within thirty days after the execution and delivery of the writing sued on. There was no denial that W. A. Wickliffe executed and delivered to Hogg the writing sued upon on behalf of himself and the W. A. Wickliffe Coal Company, of which he was president, or that he had the authority to so bind the company, or that the writing sued upon was binding upon the com-

pany if Hogg's option to purchase was exercised and
complied with by him within the thirty days provided
therefor. In other words, the only defense offered was
the failure upon the part of Hogg to exercise his option
and comply therewith within the time specified, there be-
ing no attempt to put in issue the fact alleged, although
imperfectly, that in the execution of the contract Wick-
liffe was acting for both himself and the coal company,
of which he was president, and that he had the authority
to so act for and bind the company. Neither did the coal
company, by demurrer or otherwise, seek to take advan-
tage of the imperfect assertion by the plaintiff that Wick-
liffe, in the execution and delivery of the contract to
Hogg, was acting for and with authority to bind it. Not
only did defendant fail to deny that Wickliffe, in the exe-
cution of the writing sued upon, was acting for and on
behalf of the coal company and with authority so to do,
but they also failed to attempt in any way to either ex-
clude or put in issue the question of Wickliffe's agency
or authority on behalf of the coal company. Moreover,
the defendant alleged that not the plaintiff, the First
National Bank of Central City, but other assignees, T. B.
Caldwell and others, were entitled to recover whatever,
if anything, they owed under the contract; and that T. B.
Caldwell and his associates were therefore necessary
parties to the action. T. B. Caldwell and his associates
were thereupon made parties defendant and filed their
answer and cross-petition against the defendants, assert-
ing their right and denying the right of the plaintiff to
recover of defendants upon the contract.

The issues between the claimants were completed by
appropriate pleadings and the issue between the First
National Bank and T. B. Caldwell and his associates
upon the one side and the defendants, W. A. Wickliffe
and the Wickliffe Coal Company, upon the other, as to
whether or not Hogg had exercised and complied with
the terms of his option within thirty days after the exe-
cution of the contract sued on, was set for trial on the
10th day of the September, 1917, term of court, but the
issue between the two assignees of Hogg, who were
claiming the benefit of the contract, as to which was en-
titled thereto, was continued until the next term of the
court. Upon a trial before a jury of the issue between
Hogg's assignees on the one side and Wickliffe and the

coal company on the other, after the completion of the evidence on behalf of the claimants, the defendants, Wickliffe and the coal company, declined to introduce any evidence and both sides moved for a directed verdict in their behalf. The motion of the defendants was overruled and that of the claimants sustained, and upon the verdict returned by the jury in their behalf, a judgment was entered in favor of the First National Bank of Central City and T. B. Caldwell and his associates, against W. A. Wickliffe and the Wickliffe Coal Company for $16,500.00, with interest and costs, but it was further adjudged by the court that the judgment against Wickliffe and the coal company for the $16,500.00 should not be enforced by the claimants, but by the court's commissioner, and the funds by him held until a determination of the issue between the claimants as to which was entitled thereto. It is from this judgment that the appeal is prosecuted.

Appellants for reversal insist: (1) that the contract sued on as shown by the evidence was never complied with according to its terms by Hogg or anyone for him; (2) that there was a fatal variance between the pleadings and the proof, and (3) that it was error to enter a judgment against them in favor of the two claimants jointly when there was no joint interest, but the fund if due at all, was due wholly to one, to the exclusion of the other of the two claimants. It is our judgment that the second of the three contentions must be sustained, and that because thereof the judgment must be reversed, as a result of which conclusion it will be unnecessary to consider or decide either of the other two contentions made by appellant.

We have heretofore set out the pleadings sufficiently to show that the only defense relied upon by the defendants was the failure upon the part of Hogg to comply with the terms of the contract sued upon, under and by reason of which only was there any liability asserted against either of the defendants to him or his assignees for the $16,500.00, the payment of which this action seeks to enforce. The pleadings of appellees specifically allege that Hogg had complied with this contract according to its terms and within thirty days after its execution; the proof shows that not only was this not true, but that there were between Hogg and the Wickliffe Coal Com-

pany some seven or eight additional contracts, modifying the terms, although not changing the purchase price of the option referred to in the contract sued upon, before be became the purchaser of the properties of the Wickliffe Coal Company on January 1, 1910, under a title bond, and that his assignees did not secure a deed therefor until March 18, 1912, about which nothing appeared in the pleadings. Not only so, but the first of the supplemental contracts between Hogg and the coal company was executed some days after the termination of his original option, and if his assignees can recover upon the contract sued on, it is because that contract and the original option were but parts of one and the same original contract, and that this contract as a whole after its lapse was revived or extended by the subsequent contracts which referred to the original option, but made no reference in terms to the contract declared upon by appellees. Appellees are now contending that the two papers originally executed by Hogg and W. A. Wickliffe in his individual capacity and the other on behalf of the company of which he was president, are but separate parts of one and the same contract, and this one entire original contract, although allowed to lapse without compliance by Hogg, is nevertheless binding upon defendants because of extensions or novations thereafter made by them.

It is therefore apparent that appellees, although declaring upon but one written evidence of a contract between the original parties, are seeking to recover not upon the original contract declared upon, but upon that contract in connection with several others, which it is claimed give a force to the original contract not incorporated therein. Their position is not unlike that of the payee of a note, who, after it is barred by the statute of limitations, seeks to recover of the payor because of an extension of its terms by a new promise, and this under the thoroughly established rule in this state can only be done where the new promise is pleaded. All of the reasons that exist for requiring the assertion by pleading of a new promise to authorize recovery upon a note that has been barred by limitation are equally applicable and forceful where an attempt is made to recover upon a written contract which by its terms is barred and resort must be made to other writings and promises to give to it a force and effect beyond that contained in its original

provisions to warrant a recovery. The purpose of pleadings is to apprise an adversary of the issue he is required to meet, and the pleadings here give no notice whatever to the defendants that they were required to do anything in defense of the action, other than to show the falsity of the allegations in the petition that Hogg had exercised his option according to the terms specified in the contract sued upon, This they did, and the proof upon which appellees relied for a recovery was not in support of any pleading. The court was therefore in error both in sustaining appellees' motion and in overruling appellants' motion for a directed verdict, since the variance between the pleadings and proof amounted to a failure of proof under section 131 of the Code of Practice.

Upon a return of the case the parties should be permitted to amend their pleadings so as properly to present the real issues they desire to have tried.

Wherefore the judgment is reversed and the cause remanded for proceedings not inconsistent herewith.